## BLOOMINGDALE, RHINE & CO. *v.* MEMPHIS & CHARLESTON RAILROAD COMPANY.

STOPPAGE IN TRANSITU. *Case stated:* B. R. & Co. sold and shipped to V. R. & H., on the 22d September, 1875, on four months' time, a bill of goods. They telegraphed M. & Bros. to stop the goods. The telegram was taken to the freight agent of the railroad, who promised to do so and that he would reship them to the sellers, who were notified. The goods were afterwards, by mistake or negligence, delivered to V. R. & H., who failed on the 23d December following. Upon maturity of the account, B. R. & Co. brought suit against V. R. & H., recovered judgment, but failed to make their debt, the property of the debtors being absorbed by prior judgments. B. R. & Co. sued the railroad company for wrongfully delivering the goods. *Held:*

Bloomingdale, Rhine & Co. *v.* M. & C. Railroad Co.

1. The notice was sufficient. There need be no express demand. The notice is sufficient, if the carrier is clearly informed that it is the intention and desire of the seller to exercise the right of stoppage *in transitu.*

2. It is not required, when the right of stoppage *in transitu* is exercised, that the buyer should have been declared a bankrupt or insolvent by legal proceedings, or that he should have made an assignment, but insolvency fairly means that the party should be shown to have been unable to meet the debt due the seller, at the time of the exercise of the right, when the debt should fall due. The purchaser may not have actually failed or have gone to protest, but might be hopelessly insolvent. But the objection that the purchaser was not insolvent at the time of the stoppage, can only be taken by the purchaser and not by the carrier, except that he may show as a matter of defense that the debt could have been made by due diligence.

3. The bringing suit upon the debt when due and recovery of judgment, does not estop the seller from suing the carrier for wrongful delivery.

FROM SHELBY.

Appeal in error from the Circuit Court of Shelby county.   C. W. Heiskell, J.

T. B. Edgington for plaintiffs.

Humes & Poston for defendants.

Freeman, J., delivered the opinion of the court.

This is an action brought before a justice of the peace originally, in Memphis, to recover from the railroad company the value of goods, which had been sold by plaintiffs to Van Ronkle & Heiliger, a firm doing business in the city of Memphis.

The facts are, that plaintiffs sold a bill of goods to said firm in the city of Philadelphia, on the 22d of September, 1875. Some days after the goods were shipped by rail to the purchasers, the sellers learn-

ing on inquiry of other merchants, that the firm of Van Ronkle & Heiliger were doubtful as to solvency, and that other parties were refusing to ship goods to them, telegraphed Menken & Bros., of Memphis, to stop the goods, if not delivered, on their arrival. This telegram was taken to the general freight agent of the railroad, and he promised to do as requested. He afterwards wrote to Menken & Bros. that he would reship them to the plaintiffs at Philadelphia, on same terms as to freight they had been charged for when shipped from that place. This letter and these facts were immediately, on the 8th day of October, 1875, sent to plaintiffs, who thereupon relied on defendant to do what had been promised.

The goods, however, were in a few days after this, as stated by the freight agent, by mistake of his orders, by some employee of the company, delivered to the consignees, and plaintiffs thereby lost the possession, which would have accrued to them, had their orders been obeyed as to retention of the goods, and the company complied with their agreement to retain the goods, or reship them.

On the 23d of December after this, the firm of Van Ronkle & Heiliger went to protest, and immediately thereafter, attachments were issued and levied on all their property, the same sold under judgments rendered in these cases, and failed to pay all their debts, leaving plaintiffs' debt unpaid.

The goods were sold originally on four months' time. Plaintiffs, on the 29th of December, 1875, however, brought suit on their account for $477, obtained

judgment, had execution levied, subject to the attachments, but failed to realize their debt by reason of the prior liens. They thereupon brought this suit against the company for the wrongful delivery of the goods. On the trial in the circuit court, under the charge of Judge Heiskell, a verdict was had for defendants, from which there is an appeal in error to this court.

Several questions have been debated before us. Some of which, so far as necessary to determine the case, we proceed to dispose of.

There is nothing in the objection, that the notice was insufficient, as given to the agent of the company. Whether sufficient or not, as shown in the proof, the defendant's agent was satisfied with it, and evidently knew its object, which was to exercise the right of the vendor, to stop goods sold while *in transitu*, and before delivery. Acting on this, the company, by their agent, agreed to retain the goods, and plaintiffs, relying on this promise, were probably prevented from taking more active steps to secure themselves in the exercise of their right to stop the goods. It is too late now for defendants to insist on any defects, if any existed, in the notice given them.

It is settled law, that the seller of goods may exercise the right of stoppage *in transitu* at any time before the delivery of the goods to the consignee, or a *bona fide* sale of them to a third person, as by endorsement of the bill of lading in good faith for a valuable consideration: See Wait's Actions and Defenses, vol. 5, p. 616, and authorities cited. It is

equally clear that a carrier, upon notice of the exercise of this right, or demand of control of the goods by the seller, is bound not to deliver the goods to the purchaser, and will become liable, as for conversion of the goods, if he decline to deliver them to the seller, or delivers to the vendee; and a notice by the vendor, without an express demand of the goods, is sufficient to charge the carrier. If the latter is clearly informed that it is the intention and desire of the former to exercise the right, the notice has been held sufficient: See Wait, vol. 5, p. 615, and cases cited.

It is clear, on these principles, that the defendant was liable to plaintiffs for the wrongful delivery of the goods to the purchaser, whether purposely or by neglect of their agent, after what had occurred upon the notice given, unless there is some other ground of defense shown in the record.

It is said the seller has the right to stop *in transitu* only in case of insolvency of the purchaser at the time of the exercise of that right, and so his Honor substantially charged the jury. This might be found as the statement of the rule in most cases, and is certainly substantially correct as between the seller and the buyer; but we think, as between a third party, such as the carrier is in this case at least, no strict proof of insolvency should be required in order to support the right of the seller to resume possession of the goods as against a purchaser of doubtful solvency. In fact it does not lie in the mouth of a derelict carrier to interpose the objection that the right was

being wrongfully exercised.    He may well show, how-
ever, the fact that the party was solvent after the
delivery, and that by due diligence the debt might
have been made, and therefore the plaintiff was not
injured by his wrongful delivery of the goods.    But
we think, if the purchaser submit to the stoppage of
his goods, or does not contest the right, the carrier
could not interpose properly the objection that the
party was solvent, and therefore the right not properly
exercisable by the seller, in case the carrier had im-
properly converted the goods. .

Be this as it may, however, we think the sounder
statement of the ground for exercise of the right is,
as given by Mr. Wait, vol. 5, p. 614, that "it is
not necessary to prove or make out insolvency, that
the buyer should have been declared a bankrupt or
insolvent by a judicial tribunal, or shown to be so by
legal proceedings, or that he should have made an as-
signment of his property, or the like—but that insol-
vency, in a case like this, fairly means that the party
shall be shown to have been unable to meet the debt
due the seller, at the time of the exercise of the right,
when that debt should fall due; and if this fact sat-
isfactorily appears, no matter how proven, the law
requires no more": See cases cited.

A purchaser may not have actually failed, not have
gone to protest, yet it might be clear that he was
hopelessly insolvent, and would be totally unable to
pay, in a case like this, when the debt fell due.    To
require the seller to deliver the goods under such
circumstances, would be to require him to throw away

his goods—in effect, practically would be to deny him
the right to resume possession before delivery—and at
the same time there exist a certainty, or a reasonable
one at least, that he would never be paid for them—
probably a certainty that if delivered they would at
once, or in a short time, be appropriated by other
creditors.    This cannot be the law in such cases, in
a system  professing  to  be based  on reason and have
for its aim the attainment of justice.

His Honor, the Circuit Judge, made the whole case
turn with the jury on the question whether the party
had been shown to be actually insolvent on the 10th
of October, 1875, when the goods were delivered.
They did not go to protest until the 23d of Decem-
ber after this, but it is clear from the proof, so far as
this record shows, that the parties were in such condi-
tion that the seller would have had no prospect of
receiving payment for his goods at the time his debt
fell due; and this being so, we hold he might well
exercise his right to stop them, and resume his pos-
session.

It is insisted, however, that the fact that after this
wrongful delivery, the plaintiffs sued on their account,
as for a debt due them for the goods sold, estops
them from recovering against the company.    This
would go on the idea, that the exercise of the right
of stopping *in transitu* is a rescission of the contract
of sale, and a suit for the price would be a waiver
of this, and an affirmance of the sale.

Our first impression was that this might present
some difficulty, but upon examination of the authorties,

it seems now well settled, that the exercise of the right to stop is not a rescission of the sale, but simply places the parties, as nearly as may be, in the same situation they would have been if the vendor had not parted with the possession: See Wait, vol. 5, p. 618, and numerous cases cited; also Indermaur's Principles of Common Law, p. 95; 10 M. & Welby, 436, 451, there cited.

The vendor, in exercising the right of stoppage, does not take possession of the goods as his own, but as the goods of the purchaser, on which the vendor has a lien for the unpaid purchase money: Wait, p. 618. It is simply, in other words, a resumption of his possession, the incidents of such possession of goods sold thereby attaching. This being so, it follows that the vendor, thus resuming his possession, may pursue any other remedies he may have to enforce his debt. In a case like the present, the carrier might well have insisted it was his duty to have done so, and probably interposed it as a defense to this action, if the plaintiffs could have made their debt by law, and had failed in diligently prosecuting such legal remedy.

It follows, the court erred in its charge to the jury, and the judgment must be reversed and case remanded for a new trial.